TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
BLAKE HANNAH (Cal. Bar No. 312086)
Special Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0172
    Facsimile: (213) 894-2927
    E-mail:    blake.hannah@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:24-cr-00710-MRA |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT DOUGLAS PINEDA |
| v. | |
| DOUGLAS PINEDA, | |
| Defendant. | |

1.    This constitutes the plea agreement between Douglas Pineda ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts one and


1/6/26

seventeen of the indictment in United States v. Douglas Pineda, No. 2:24-cr-00710-MRA, which charge defendant with Possession with Intent to Distribute at Least 50 Grams of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (count one), and Felon in Possession of Firearms and Ammunition, in violation of 18 U.S.C. § 922(g)(1) (count seventeen).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

3.   Defendant further agrees:

a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following:

2

i.   $25,700 in U.S. currency seized during the March 5, 2024 search of 178 East 47th Place, Los Angeles, California;

ii.   a Century Arms, model Micro VSKA, 7.62x39mm caliber semi-automatic pistol, bearing serial number MSV701189;

iii.  a ROMARM/CUGIR, model Draco, 7.62x39mm caliber semi-automatic pistol, bearing serial number PMD-1146-19RO;

iv.   a ROMARM/CUGIR, model Draco, 7.62x39mm caliber semi-automatic pistol, bearing serial number PMD-1434-19RO;

v.   a ROMARM/CUGIR, model Draco, 7.62x39mm caliber semi-automatic pistol, bearing serial number DA-4364-15RO;

vi.   a Pioneer Arms Corp., model Sporter, 7.62x39mm caliber semi-automatic rifle, bearing serial number PAC1186896 22;

vii.  a Century Arms, model VSKA, 7.62x39mm caliber semi-automatic rifle, bearing serial number SV7058138;

viii.   a ROMARM/CUGIR, model WASR-10, 7.62x39mm semi-automatic rifle, bearing serial number ROA 21-A1-85595;

ix.   a Century Arms, model VSKA, 7.62x39mm caliber semi-automatic rifle, bearing serial number SV7079831;

x.   a Century Arms, model C39V2, 7.62x39mm caliber semi-automatic rifle, serial number C39V2A40811;

xi.   a Marcolmar Firearms LLC, model CETME L, .223 caliber semi-automatic rifle, bearing serial number L-03247;

xii.  a Combat Armory, model CA 15, multi-caliber semi-automatic pistol, bearing serial number AA92797;

xiii.   a Smith and Wesson, model M&P 15, 5.56 NATO caliber semi-automatic rifle, bearing serial number SX95415;

xiv. a Bushmaster, model XM15-E2S, .223/5.56 caliber semi-automatic rifle, bearing serial number SX95415;

xv.  a STAG Arms, model STAG-15, 5.56mm caliber semi-automatic rifle, bearing serial number 112313;

xvi. a Anderson Manufacturing, model AM-15, multi-caliber semi-automatic rifle, bearing serial number 20139282;

xvii.   a Daniel Defense, model DDM4, multi-caliber semi-automatic rifle, bearing serial number DDM4181971;

xviii.   a Daniel Defense, model DDM4V3, multi-caliber semi-automatic rifle, bearing serial number DDB003813B;

xix. a DPMS Panther Arms, model A-15, multi-caliber semi-automatic rifle, bearing serial number FFH082960;

xx.  a Smith and Wesson, model SD9, 9mm caliber semi-automatic pistol, bearing serial number EFC1280;

xxi. a Beretta, model PX4 Storm, .40 caliber semi-automatic pistol, bearing serial number PY24612;

xxii.   a Springfield Armory, model XD-45 LE, .45 caliber semi-automatic pistol, bearing serial number US551692;

xxiii.   a Pietro Beretta, model 96A1, .40 caliber semi-automatic pistol, bearing serial number A45540M;

xxiv.   a FH Herstal Belgium, model Five-Seven, 5.7x28mm caliber semi-automatic pistol, bearing serial number 386365718;

xxv. a Girsan, model Regard MC, 9mm caliber semi-automatic pistol, bearing serial number T6368-21A 10619;

xxvi.   a Smith and Wesson, model MP9, 9mm caliber semi-automatic pistol, bearing serial number NKH5752;

xxvii.   a Glock, model 23, .40 caliber semi-automatic pistol, bearing serial number VZM149;

4

xxviii.   a Bersa SA, model Thunder 380 Plus, .380 caliber semi-automatic pistol, bearing serial number M51683;

xxix.   a Taurus, model G2C, 9mm caliber semi-automatic pistol, bearing serial number ABE598900;

xxx. a Giran, model MC, 9mm caliber semi-automatic pistol, bearing serial number T6368-23CJ00601;

xxxi.   a Beretta, model APX, 9mm caliber semi-automatic pistol, bearing serial number AXC127425;

xxxii.   a Colt, model KVIV, .45 caliber semi-automatic pistol, bearing serial number 480912;

xxxiii.   a Smith and Wesson, model M&P9C, 9mm caliber semi-automatic pistol, bearing serial number DTN4588;

xxxiv.   a Springfield Armory U.S.A., model XD-45 ACP, .45 caliber semi-automatic pistol, bearing serial number MG690537;

xxxv.   a Smith and Wesson, model Bodyguard 380, .380 caliber semi-automatic pistol, bearing serial number EBB0488;

xxxvi.   a Pietro Beretta, model 84F, 9mm caliber semi-automatic pistol, bearing serial number D75966Y;

xxxvii.   a Glock, model 30, .45 caliber semi-automatic pistol, bearing serial number BVEG141;

xxxviii.   a Beretta, model BU9 Nano, 9mm caliber semi-automatic pistol, bearing serial number NU001442;

xxxix.   a Canik, model 2, 9mm caliber semi-automatic pistol, bearing serial number T6472-18 AP 08365;

xl.   a Glock, model 43X, 9mm caliber semi-automatic pistol, bearing serial number BZRE788;

xli. a Smith and Wesson, model 4013, .40 caliber semi-automatic pistol, bearing serial number VCU6729;

xlii.    a Springfield Armory U.S.A., model XD-9 LE, 9mm caliber semi-automatic pistol, bearing serial number BA392509;

xliii.    a Taurus, model Millenium G2, 9mm caliber semi-automatic pistol, bearing serial number TJZ82179;

xliv.    a Glock, model 29, 10mm caliber semi-automatic pistol, bearing serial number BWTV095;

xlv. a Pietro Beretta, model 92FS, 9mm caliber semi-automatic pistol, bearing serial number M86571Z;

xlvi.    a Bersa SA, model Thunder 380 Plus, .380 caliber semi-automatic pistol, bearing serial number N03735;

xlvii.    a Smith and Wesson, model 5906, 9mm caliber semi-automatic pistol, bearing serial number TEA6679;

xlviii.    a Springfield Armory, model XD-9, 9mm caliber semi-automatic pistol, bearing serial number GM847432;

xlix.    a Glock, model 19, 9mm caliber semi-automatic pistol, bearing serial number BFER861;

l.    a CZ, model C2 Shadow, 9mm caliber semi-automatic pistol, bearing serial number F340431;

li.    a Smith and Wesson, model SW40VE, .40 caliber semi-automatic pistol, bearing serial number DUW3239;

lii. a Smith and Wesson, model MP9, 9mm caliber semi-automatic pistol, bearing serial number NMH9686;

liii.    a Sig Sauer, model 1911, .45 caliber semi-automatic pistol, bearing serial number 54A012535;

liv. a CZ, model 75B, 9mm caliber semi-automatic pistol, bearing serial number C019737;

6

lv.    a Smith and Wesson, model Airweight, .38 SPL+P caliber revolver, bearing serial number CTW5599;

lvi. a Kel-Tec, model KSG, 12 gauge shotgun, bearing serial number XXF226;

lvii.    a privately made AR-15 type .223 caliber rifle, bearing serial number Q4FMBUS8F, with a barrel length of approximately 9 inches;

lviii.    a privately made AR-15 type .223 caliber rifle, bearing serial number Q4FMBUS8E, with a barrel length of approximately 9 inches;

lix. the five silencers, bearing no markings and no serial numbers, seized from 178 East 47th Place, Los Angeles California on March 5, 2024 [ATF Ex. 7-11];

lx.    any, and all, ammunition seized from 178 East 47th Place, Los Angeles, California on March 5, 2024 (collectively the "Forfeitable Property").

b.    To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the assets.

c.    To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Property, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.    Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Property.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf

7

of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Property.

e.    Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

f.    Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

g.    To prevent the transfer, sale, destruction, or loss of any and all property described above to the extent defendant has the ability to do so.

h.    To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.    That forfeiture of Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

THE USAO'S OBLIGATIONS

4.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.  Defendant

further agrees that he may be treated as if he had been convicted of the dismissed charges for purposes of U.S.S.G. § 1B1.2(c), regardless of whether the factual basis below would be sufficient to satisfy all elements of each charge. Defendant waives the right to challenge the sufficiency of the factual basis as to any element of any dismissed charge.

d. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

NATURE OF THE OFFENSES

5. Defendant understands that for defendant to be guilty of the crime charged in count one, that is, Possession with Intent to Distribute at Least 50 Grams of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), the following must be true: (1) defendant knowingly possessed methamphetamine; and (2) defendant possessed it with the intent to distribute it to another person.

6. Defendant understands that for defendant to be subject to the statutory maximum and statutory minimum sentence set forth below, the government must prove beyond a reasonable doubt that defendant possessed with intent to distribute at least 50 grams of methamphetamine. Defendant admits that defendant, in fact, possessed with intent to distribute at least 50 grams of methamphetamine.

7. Defendant further understands that for defendant to be guilty of the crime charged in count seventeen, that is Felon in Possession of Firearms, in violation of 18 U.S.C. § 922(g)(1), the

9

following must be true: (1) defendant knowingly possessed a firearm; (2) the firearm had been shipped or transported from one state to another or between a foreign nation and the United States; (3) at the time the defendant possessed the firearm, defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; and (4) at the time the defendant possessed the firearm, the defendant knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

<u>PENALTIES</u>

8. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii) is: life imprisonment; a lifetime period of supervised release; a fine of $10,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9. Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii) is: 10 years' imprisonment, followed by a five-year period of supervised release, and a mandatory special assessment of $100.

10. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 922(g)(1), is: 15 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is:

10

life imprisonment; a lifetime period of supervised release; a fine of $10,250,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $100.

12. Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

13. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

14. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated

11

collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

15.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

16.   Defendant understands that, if defendant is not a United States citizen, the felony convictions in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony convictions in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty pleas.

12

FACTUAL BASIS

17.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 19 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

On March 5, 2024, defendant knowingly possessed with intent to distribute at least 50 grams of methamphetamine, along with other controlled substances, and approximately 57 firearms in his residence in Los Angeles County, within the Central District of California, despite knowing that he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year.

Specifically, on the evening of March 5, 2024, law enforcement executed a search warrant at defendant's home.  Inside defendant's residence, law enforcement found 57 firearms, 25.6 kilograms of methamphetamine, 2.7 kilograms of a mixture and substance containing a detectable amount of fentanyl, thousands of rounds of ammunition, five firearm silencers, $25,700 in U.S. currency, approximately 500 grams of cocaine, approximately 5,000 blue M30 pills containing a mixture and substance of fentanyl, and approximately 72 grams of heroin.  Defendant knowingly stored the methamphetamine and fentanyl at his home with the intent to sell drugs to other persons.

The firearms in defendant's possession on March 5, 2024, detailed above in paragraphs 3(a)(ii)-(lvi) had previously traveled

13

in interstate or foreign commerce before defendant possessed them in California on that day.

In addition, defendant was also aware he possessed three firearms with a barrel less than 16 inches in length knowing each to be a firearm and short-barreled rifle, as defined in Title 26 United States Code, Sections 5845(a)(3) and (c), and knowing each had not been registered to defendant in the National Firearms Registration and Transfer Record, as required by Title 26, United States Code, Chapter 53, and defendant was aware he possessed five silencers, as defined in Title 26, United States Code, Section 5845(a)(7) and Title 18, United States Code, Section 921(a)(25), knowing each had neither been registered to defendant in the National Firearms Registration and Transfer Record nor identified by serial number, as required by Title 26, United States Code, Chapter 53.

At the time defendant possessed these firearms, he knew that he had been previously convicted of the following felony crimes, punishable by imprisonment for a term exceeding one year:

a. Burglary, in violation of California Penal Code Section 459, in the Superior Court for the State of California, County of Los Angeles, Case Number YA049790, on or about February 20, 2002;

b. Receiving Stolen Property, in violation of California Penal Code Section 496, in the Superior Court for the State of California, County of Los Angeles, Case Number YA049790, on or about February 20, 2002;

c. Possession of Cocaine Base for Sale, in violation of California Health & Safety Code Section 11351.5, in the Superior

Court for the State of California, County of Los Angeles, Case Number BA233170, on or about October 31, 2002; and

d.   Felon in Possession of a Firearm, in violation of California Penal Code Section 12021(A)(1), in the Superior Court for the State of California, County of Los Angeles, Case Number BA356909, on or about October 26, 2009.

SENTENCING FACTORS

18.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).   Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crimes of conviction.

19.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 38 | U.S.S.G. § 2D1.1(a)(5), (c)(1) |
| Dangerous Weapon: | +2 | U.S.S.G. § 2D1.1(b)(1) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.   Defendant understands that defendant's offense level could be increased if defendant is a

15

career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

20.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

21.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

22.  Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.  The right to persist in a plea of not guilty.

      b.  The right to a speedy and public trial by jury.

      c.  The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

      d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      e.  The right to confront and cross-examine witnesses against defendant.

      f.  The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

16

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

23.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

24.  Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction within or below the range corresponding to an offense level of 39, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any

17

of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

25. The USAO agrees that, provided (a) all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 39, the USAO gives up its right to appeal any portion of the sentence.

<u>WAIVER OF RIGHTS CONCERNING PLEA COLLOQUY AND FACTUAL BASIS</u>

26. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing; (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible. Defendant further agrees that this paragraph of the agreement is severable. Thus, defendant's waivers are binding and effective even if, subsequent to defendant's signing this agreement, defendant declines to plead guilty, the Court declines to accept his guilty plea, or, if this agreement is of the type described in Federal Rule of Criminal Procedure 11(c)(1)(A) or (c)(1)(C), the Court rejects this agreement. Defendant also agrees that his waivers

18

are binding and effective even if some other portion of this agreement is found to be invalid by this Court or the Ninth Circuit.

RESULT OF WITHDRAWAL OF GUILTY PLEA

27.   Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

28.   Defendant agrees that if any count of conviction is vacated, reversed, or set aside, or the dangerous weapon or drug premises enhancements imposed by the Court to which the parties stipulated in this agreement is vacated or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on any remaining counts of conviction, with

both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

### EFFECTIVE DATE OF AGREEMENT

29.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

30.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

31.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

20

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

32.    Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

33.    Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 19 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed

21

as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

34. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and within the statutory maximum.

NO ADDITIONAL AGREEMENTS

35. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

36. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

\\

\\

22

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

_____     January 9, 2026
BLAKE HANNAH                          _____
Special Assistant United States       Date
Attorney

Douglaspineda                         1/9/25
_____     _____
DOUGLAS PINEDA                        Date
Defendant

_____     1/9/25
IBOH UMODU                            _____
Attorney for Defendant                Date
Douglas Pineda

23

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_Douglas Pineda_

DOUGLAS PINEDA
Defendant

Date 1/9/25

24

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Douglas Pineda's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          _1/9/25_____
IBOH UMODU                               Date
Attorney for Defendant
Douglas Pineda

25